UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6277-CR-HURLEY    6265  2/och

NIGHT BOX
FILED

JAN 1 9 2001

CLERK, USDC / SDFL / WPB

UNITED STATES OF AMERICA,    )
                             )
Plaintiff,                   )
                             )
vs.                          )
                             )
JOSEPH PONTECORVO,           )
                             )
Defendant.                   )
_____)

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States, by and through undersigned counsel, hereby opposes the defendant's

Motion to Suppress because the United States respectfully submits that the defendant was arrested

pursuant to exigent circumstances, and the weapons sought to be suppressed were found during the

course of a protective sweep conducted in association with the defendant's arrest. The reasons for

this opposition are as follows:

1. Although the Fourth Amendment generally prohibits law enforcement from making a

warrantless and non-consensual entry into a suspect's home for the purposes of making a felony

arrest, law enforcement may constitutionally engage in precisely this conduct were exigent

circumstances are present. U.S. v. Standridge, 810 F.2d 1034, 1036-37 (11th Cir.), cert. denied, 481

U.S. 1072 (1987) (citing Payton v. New York, 445 U.S. 573 (1980)).

2. Factors that indicate exigent circumstances include the following:

    (1)    the gravity or violent nature of the offense with which the suspect is to be
            charged;



(2)    a reasonable belief that the suspect is armed;

(3)    probable cause to believe that the suspect committed the crime;

(4)    strong reason to believe that the suspect is in the premises being entered; and

(5)    a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public.

Standridge, 810 F.2d at 1037 (citing Dorman v. United States, 435 F.2d 385, 392-93 (D.C. Cir. 1970) (en banc); United States v. Campbell, 581 F.2d 22, 25-27 (2d Cir. 1978); United States v. Newbern, 731 F.2d 744, 748-49 (11th Cir. 1984); United States v. Roper, 681 F.2d 1354, 1357 n.1 (11th Cir. 1982) (dictum), cert. denied sub nom. Newton v. United States, 459 U.S. 1207 (1983)).

3. In this case all five factors were present at the time that the Broward Sheriff's Office made the determination that it needed to enter the defendant's residence for the purpose of arresting him.

a. First, the state of Florida ultimately charged the defendant with aggravated assault with a firearm. This constitutes a grave and violent offense, particularly when viewed in light of the facts known about the defendant at the time that the officers determined to enter the defendant's residence to arrest him. The record reflects that two officers had heard gunshots in the area of the defendant's residence. Roper Report (attached as Exhibit 1). Additionally, they interviewed Bobby Wilson, the victim, who told them that from the defendant's residence, the defendant had shot at Wilson twice with a long rifle for no apparent reason, and that a bullet had hit a rock near Wilson's feet and the rock had bounced up and made a puncture wound on Wilson's arm. Id. Certainly, any crime involving gunfire, particularly where a victim is actually hit as a result of that gunfire, constitutes a grave and serious crime.

b. Second, BSO had a reasonable belief that the suspect was armed. Not only had

2

Wilson informed BSO that the defendant had and used a firearm, but BSO officers themselves heard the gunfire in question. Exhibit 1. Additionally, Officer Roper observed the defendant standing inside his residence and holding a firearm while the defendant's house was under surveillance and BSO attempted to persuade the defendant to surrender voluntarily. Id.

       c.  Third, strong probable cause existed leading the officers to believe that the defendant had in fact committed an armed assault. As noted above, Wilson had reported the attack, and powerful corroborating evidence substantiated his claim. Among other such evidence, BSO officers themselves heard the shots that the defendant fired. Officer Roper saw the defendant inside his residence with a firearm. Additionally, BSO officers attempted for two hours to get the defendant to surrender himself voluntarily. Exhibit 1. Instead, the defendant banged on the door of his residence, said "I know who you are and I don't want to talk to you" in response to BSO's efforts to obtain the defendant's voluntary surrender, and did not surrender himself in the two hours in which BSO officers used a bullhorn to attempt to make contact with the defendant. Id.; see also Carbo Report (attached as Exhibit 2).

       d.  Fourth, the officers knew that the defendant was in the premises at issue. Wilson informed the officers that the defendant had come out of the residence in question. Furthermore, BSO officers had cited the defendant in the residence. Exhibit 1. Any question that BSO may not have had the correct residence was resolved when BSO officers observed the defendant with a rifle in his residence and the defendant refused to leave the premises.

       e.  Finally, the nature of the defendant's conduct at the time that the BSO officers decided to enter the defendant's residence to arrest the defendant endangered the safety of the officers and the public. Basically, the situation appeared to be that of a barricaded gunman. Past

3

experience indicates that such individuals are highly unpredictable and that they could strike out at any time. Moreover, the BSO officers could not be certain that no other individuals were at the defendant's residence. For all of these reasons, exigent circumstances justifying BSO's warrantless entry into the defendant's residence existed.

4. Once the officers determined that it was necessary to effect the arrest of the defendant in his residence, the officers were well within the law in conducting a protective sweep. A protective sweep, incident to a lawful arrest, is valid were it consists of "'a quick and limited search of a premises, . . . conducted to protect the safety of police officers or others.'" United States v. Hromada, 49 F.3d 685, 690 (quoting Maryland v. Buie, 494 U.S. 325, 327 (1990)). "Officers faced with risks during in-home arrests are permitted 'to take reasonable steps to ensure their safety after, and while making the arrest.'" Id. (quoting Buie, 494 U.S. at 334). As the Eleventh Circuit noted in Hromada, 49 F.3d at 690 n.9, "[T]he dangers presented by in-home arrests are often greater than those conducted on the street due to the 'home turf' advantage the suspect as over the police." Officers are "free to seize any evidence they discover[] in plain view within the proper scope of the protective sweep." Id. at 690 (citing United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir.) (en banc), cert. denied, 502 U.S. 07 (1991)).

5. In this case, BSO officers found the machine gun, silencer, and explosive device in plain sight as the result of an appropriately limited protective sweep. When BSO officers attempted to place the defendant under arrest, the defendant resisted and a short struggle ensued. Loges Report (attached as Exhibit 3). While effecting the defendant's arrest, BSO officers observed in plain view the machine gun and silencer sought by defendant to be suppressed "well within arm's reach" of the defendant, as well as an explosive device located next to the pistol. Id.; DiMaggio Report (attached

4

as Exhibit 4).

For the foregoing reasons, the United States respectfully submits that the defendant's Motion

to Suppress should be denied.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By  _Robin S. Rosenbaum_

Robin S. Rosenbaum
Assistant United States Attorney
Florida Bar No. 908223
500 E. Broward Blvd.
Suite 700
Fort Lauderdale, Florida 33394
Tel: 954-356-7255 ext. 3595
Fax: 954-356-7228

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was faxed January 19,

2001, to Russell J. Williams, Esq., 400 S.E. Sixth Street, Fort Lauderdale, Florida 33301, Facsimile

Number 954-462-8594

_Robin S. Rosenbaum_

Robin S. Rosenbaum
Assistant United States Attorney

5

Exhibit 1

O.R. # 0 1 0 1 - 1 1 1 0 2 6 5 | | |

| SUSPECT | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Suspect Code S-Suspect E-Escapee A-Arrestee Z-Other | Code | # | Juvenile | Name (Last, First, Middle) | | | | |
| Maiden Name | | | Nickname/Street Name | | Place of Birth | | Residence Phone ( ) | |
| Last Known Address (Street, Apt. Number) | | | | City | State | Zip | Business Phone ( ) | |
| Occupation | | Employer/School | | Address | | | Social Security Number | |
| Driver's License State/Number | | Immigration and Naturalization Number | | Other I.D. Number | | FL/OBTS Number (Arrested) | FCIC/NCIC | |
| Clothing (Describe) | | | | | | Scars/Marks/Tattoos (Location/Describe) | | |
| Race | Sex | Date of Birth or Age | | Height | Weight | Eye Color | Hair Color | Other |

| CODES | | | | | | | |
|---|---|---|---|---|---|---|---|
| Activity P-Possess S-Sell B-Buy T-Traffic R-Smuggle | D-Deliver E-Use K-Dispense/Distribute M-Manufacture/Produce Cultivate | Z-Other | Type A-Amphetamine B-Barbituate C-Cocaine E-Heroin H-Hallucinogen | M-Marijuana O-Opium/Derivative P-Paraphernalia Equipment S-Synthetic | U-Unknown Z-Other | Unit 1 Gram 2 Miligram 3 Kilogram 4 Ounce 5 Pound | 6 Ton 7 Liter 8 Mililiter 9 Dose Unit/Item |

| DRUGS | | | | | | |
|---|---|---|---|---|---|---|
| Activity | Type | Description | Quantity | Unit | Estimated Street Value $ | .00 |
| Activity | Type | Description | Quantity | Unit | Estimated Street Value $ | .00 |
| Activity | Type | Description | Quantity | Unit | Estimated Street Value $ | .00 |

### NARRATIVE

WHILE ON ROUTINE PATROL, OFC FERNANDEZ (1356) AND I WERE PARKED IN SEPARATE MARKED POLICE VEHICLES AT NW 9 AVE/NW 6 ST WHEN WE BOTH HEARD 2 GUNSHOTS WHICH CAME FROM A LOCATION TO THE EAST OF US. WE BOTH DROVE OUR POLICE VEHICLES EASTBOUND ON NW 6 ST TO INVESTIGATE. WHILE DRIVING EASTBOUND, AN ALERT TONE CAME OVER THE POLICE RADIO ADVISING OF A WEAPONS COMPLAINT WHERE 2 GUNSHOTS HAD BEEN FIRED.

I MADE CONTACT WITH THE VICTIM, BOBBY WILSON, WHO ADVISED THAT HE WAS STANDING ON THE NORTHS1 OF NW 6 ST ACROSS FROM 14 NW 6 ST WHEN A WHITE MALE SHOUTED "WHAT THE FUCK ARE YOU LOOKING AT? AT HIM. WILSON ADVISED THAT HE ASKED THE WHITE MALE IF HE WAS TALKING TO HIM AND THE WHITE MA WENT INSIDE THE OPEN FRONT DOOR TO THE WAREHOUSE APARTMENT. WILSON ADVISED THAT HE OBSERVED THE WHITE MALE RETRIEVE A LONG RIFLE FROM THE FRONT PART OF THE APARTMENT AND START TO WALK BACK OUTSIDE TOWARDS HIM.

WILSON ADVISED THAT HE WAS IN FEAR FOR HIS LIFE AND STARTED TO RUN WESTBOUND CROSSING NW 6 ST AT THE SAME TIME. WILSON ADVISED THAT WHEN HE REACHED THE CORNER OF THE BUILDING WHICH IS JUST ON THE WEST SIDE OF THE WHITE MALE'S WAREHOUSE APARTMENT, HE HEARD A LOUD GUNSHOT AND HE RAISI HIS ARMS TO COVER HIS HEAD. WILSON ADVISED THAT HE FELT A SHARP PAIN IN HIS LEFT ARM AND TOOK COVER ON THE WEST SIDE OF THE BUILDING. WILSON ADVISED THAT HE OBSERVED A SMALL PUNCTURE C

| PROPERTY | ☐ NONE INVOLVED | ☐ STOLEN-LOST | ☐ EVIDENCE RECEIPT | ☐ TO BE FORWARDED |
|---|---|---|---|---|

OFFICER AFFIDAVIT: SWORN AND SUBSCRIBED BEFORE ME THIS _____ DAY OF _____ 19 ____

TITLE _____ PRINT NAME _____ CCN _____

SIGNATURE _____

VICTIM AFFIDAVIT: I hereby swear that on _____, I was the victim of a _Aggravated Assault_ .

which was committed without my permission and against my will, as reported by me, by persons unknown/known to me as _____

_____ and further, that I DO ✓ DO NOT ____ desire to prosecute.

Sworn and Subscribed by me this _27_ day of _August_ year _2000_

Officer's Signature _____ Victim's Signature x _Bobby Wilson_

Page 2

# FT. LAUDERDALE POL. DEPARTMENT

Ca ..mber 00-110265

Related OR#

**Supplemental Report**

| Offense: Aggravated Assault | Offense Changed to: |
|---|---|
| Location: 14 NW 6 ST, FT. LAUDERDALE, FL | Date of Incident 082700 |
|  | Date of Report:  082700 |

WOUND IN HIS LEFT ARM WHICH HE WAS BLEEDING FROM. WILSON ADVISED THAT HE FEARED THE WHITE MALE'S APARTMENT MIGHT HAVE A BACK DOOR TO IT WHICH THE WHITE MALE WOULD USE TO SNEAK AROUND AND TRY TO SHOOT HIM AGAIN SO HE GOT UP AND BEGAN TO RUN WESTBOUND ON NW 6 ST AGAIN. WILSON ADVISED THAT WHILE RUNNING WESTBOUND, HE LOOKED BEHIND HIM AND OBSERVED THE WHITE MALE STANDING WHERE WILSON HAD BEEN CROUCHED DOWN SEEKING COVER HOLDING THE RIFLE AT CHEST LEVEL LIKE HE WAS AIMING AT HIM. WILSON ADVISED THAT HE NEXT OBSERVED A MUZZLE FLASH FROM THE RIFLE AND HEARD ANOTHER GUNSHOT. WILSON ADVISED THAT HE CONTINUED TO RUN WESTBOUND AND RAN TO THE CONVENIENCE STORE LOCATED AT 201 NW 6 ST (THE FREEZE). WILSON ADVISED THAT HE USED THE PAYPHONES LOCATED ON THE EASTSIDE OF THE CONVENIENCE STORE TO CALL THE POLICE.

WILSON POINTED TO THE LISTED ADDRESS (WAREHOUSE APARTMENT) WHICH HE LAST OBSERVED THE WHITE MALE ENTER.

OFC FERNANDEZ (1356), OFC GRAUL (1348), OFC BRUSO (1352), OFC TUCKER (1339), AND SGT VINSON (1094) RESPONDED TO LISTED ADDRESS WITH ME.

UPON ARRIVAL, I OBSERVED AN OPENING BETWEEN THE WAREHOUSE APARTMENT AND THE BAIL BONDS BUILDING ON THE WEST SIDE OF THE WAREHOUSE APARTMENT WHERE THREE VEHICLES WERE PARKED FACING SOUTHBOUND. I ALSO OBSERVED THREE SMALL WINDOWS AT THE UPPER HALF OF THE WEST WALL OF THE WAREHOUSE APARTMENT. I OBSERVED THAT ONE OF THE THREE VEHICLES PARKED IN THIS OPENING WAS A WHITE VAN WHICH WAS PARKED DIRECTLY UNDER ONE OF THESE SMALL WINDOWS.
WHILE THE OTHER OFFICERS ESTABLISHED CONTACT VIA VOICE TO THE WHITE MALE THROUGH THE CLOSED FRONT DOOR TO THE WAREHOUSE APARTMENT, I CLIMBED ATOP THE WHITE VAN AND LOOKED INTO THE APARTMENT.

I OBSERVED A WHITE MALE STANDING ON THE INSIDE OF THE CLOSED DOOR HOLDING A RIFLE IN HIS RIGHT HAND AND YELLING AT THE OFFICERS ON THE OUTSIDE OF HIS APARTMENT. I HEARD ONE OF THE OFFICERS OUTSIDE OF THE APARTMENT YELL "SIR, WE NEED YOU TO COME OUTSIDE AND TALK TO US. THIS IS THE FT. LAUDERDALE POLICE DEPARTMENT, IF YOU DON'T BELIEVE US CALL 911". I OBSERVED THE WHITE MALE AND HEARD HIM STATE "I KNOW WHO YOU ARE AND I DON'T WANT TO TALK TO YOU."

| Officer: R. Roper | | CCN:  1357 | Unit: Patrol  1A218 |
|---|---|---|---|
| Reviewing Officer: | | CCN: 1122 | Date: 8/28/00 |
| Routed to: | Referred to: | | |
| Case Status | Type | 1. Arrest  2. Exceptional  3. Unfounded | Date Closed: |

Exception  1. Extradition Declined                                    3. Death of Offender              5. Prosecution Declined
         2. Arrest on primary offense secondary offense without prosecution  4. V/W Refused to cooperate  6. Juvenile/No Custody

3 6
Page  of

| FT. LAUDERDALE POL. DEPARTMENT | Case Number 00-110265 |
|---|---|
| Supplemental Report | Related OR# |

I ADVISED THE OTHER OFFICERS THAT THIS WHITE MALE WAS HOLDING A RIFLE AND STANDING ON THE INSIDE OF THE CLOSED FRONT DOOR. I NEXT HEARD SOMEONE ADVISE THE WHITE MALE TO PUT THE WEAPON DOWN WHICH HE WAS HOLDING AND THE WHITE MALE ADVISED "I DON'T HAVE A WEAPON". I OBSERVED THE WHITE MALE PLACE THE RIFLE ON A TABLE WHICH WAS ON THE INSIDE OF THE WAREHOUSE APARTMENT JUST INSIDE OF THE FRONT DOOR, HE THEN COVERED THE RIFLE WITH A WHITE CLOTH.

A PERIMETER WAS ESTABLISHED AND CAPT MANNING (884) RESPONDED TO SCENE.

I CONTINUED TO OBSERVE THE WHITE MALE WALKING AROUND INSIDE THE WAREHOUSE APARTMENT WHILE YELLING TO THE POLICE OFFICERS ON THE OUTSIDE. THE WHITE MALE WALKED TO THE REAR OF THE WAREHOUSE APARTMENT AND PLUGGED IN A LIGHT WHICH WAS ABOVE A SINK AND BEGAN TO WASH HIS FACE AND START SHAVING. THE WHITE MALE THEN WENT TO THE FRONT DOOR AGAIN AND TURNED THE LIGHTS OFF ON THE INSIDE OF THE WAREHOUSE APARTMENT. I COULD NO LONGER OBSERVE THE WHITE MALE; THEREFORE, I CLIMBED DOWN FROM THE TOP OF THE WHITE VAN.

OFC DAVID (1390) AND OFC SCHULZ (1381) ENTERED A JUNK YARD WITH SEVERAL ABANDONED VEHICLES TO THE SOUTHSIDE OF THIS WAREHOUSE APARTMENT AND VERIFIED THAT THERE WAS NOT A REAR DOOR TO THE WAREHOUSE APARTMENT.

AFTER EVERY ATTEMPT TO CONVINCE THE WHITE MALE TO EXIT HIS WAREHOUSE APARTMENT AND TALK TO US WAS MET WITH NEGATIVE RESULTS, CAPT MANNING ORDERED THE SWAT TEAM TO BE CALLED OUT.

SWAT TEAM RESPONDED AND, AFTER NEGOTIATIONS WITH THE WHITE MALE WERE MET WITH NEGATIVE RESULTS, ENTERED THE WAREHOUSE APARTMENT WHERE THE WHITE MALE, ARRESTEE, JOSEPH PONTECORVO, WAS TAKEN INTO CUSTODY.

THERE WERE NO OTHER PERSONS IN THIS WAREHOUSE APARMENT. ALL EXITS TO THE WAREHOUSE APARTMENT WERE CONTINUOUSLY OBSERVED.

SWAT MEMBERS ESCORTED PONTECORVO TO MY MARKED POLICE VEHICLE WHERE I IMMEDIATELY RECOGNIZED HIM AS THE WHITE MALE WHICH WAS STANDING INSIDE OF THE APARTMENT.

WILSON WAS TRANSPORTED TO THE SCENE WHERE HE POSITIVELY IDENTIFIED PONTECORVO AS THE WHITE MALE WHO HAD BEEN SHOOTING AT HIM.

| Officer: R. Roper | | CCN: 1357 | Unit: Patrol 1A218 |
|---|---|---|---|
| Reviewing Officer: | | CCN: 1122 | Date: 8/28/ |
| Routed to: | Referred to: | | |
| Case Status | Type | 1. Arrest 2. Exceptional 3. Unfounded | Date Closed: |

Exception  1. Extradition Declined                                   3. Death of Offender          5. Prosecution Declined
2. Arrest on primary offense secondary offense without prosecution  4. V/W Refused to cooperate  6. Juvenile/No Custody

# FT. LAUDERDALE POLI    DEPARTMENT

**Supplemental Report**

| | Cas ,mber 00-110265 |
|---|---|
| | Related OR# |

I ADVISED PONTECORVO OF HIS RIGHTS WHICH HE WAIVED. PONTECORVO ADVISED THAT HE HAD NOTHING TO HIDE AND THAT WE (FT. LAUDERDALE POLICE DEPARTMENT) COULD SEARCH HIS WAREHOUSE APARTMENT.

THE BOMB SQUAD WAS ALSO CALLED TO SCENE AFTER EXPLOSIVE DEVICES WERE FOUND INSIDE THE WAREHOUSE APARTMENT.

FORENSICS DETECTIVES RESPONDED TO SCENE AND RECOVERED VARIOUS WEAPONS FROM INSIDE THE WAREHOUSE APARTMENT. SEE THEIR SUPPLEMENT REPORTS FOR FURTHER DETAILS.

I TRANSPORTED PONTECORVO TO BGH TO BE TREATED FOR HIS INJURY WHICH HE SUSTAINED DURING HIS BRIEF STRUGGLE WITH THE SWAT MEMBERS WHO WERE TRYING TO PLACE HIM INTO CUSTODY. PONTECORVO WAS MEDICALLY CLEARED FOR JAIL ENTRY AND TRANSPORTED TO FLPD JAIL FOR BOOKING.

I ALSO PHOTOGRAPHED WILSON'S PUNCTURE WOUND ON HIS LEFT ARM AND TURNED THE PHOTOGRAPHS INTO EVIDENCE. IT APPEARED AS THOUGH THE WOUND WAS CAUSED BY THE BULLET, PONTECORVO FIRED AT HIM, HITTING THE GROUND CAUSING ROCKS TO BOUNCE UP AND ENTER HIS ARM.

| Officer: R. Roper | | CCN: 1357 | Unit: Patrol 1A218 |
|---|---|---|---|
| Reviewing Officer: | | CCN: i/2: | Date: 8/r8/8u |
| Routed to: | | Referred to: | |
| Case Status | Type | 1. Arrest  2. Exceptional  3. Unfounded    Date Closed: | |

Exception  1. Extradition Declined                                    3. Death of Offender              5  Prosecution Declined
2. Arrest on primary offense secondary offense without prosecution  4. V/W Refused to cooperate  6. Juvenile/No Custody

| FT. LAUDERDALE POLICE DEPARTMENT | | OR# :10265 |
|---|---|---|
| Supplemental Report | Exhibit 2 | Related OR# |

| Offense: Aggravated Assault | Offense Changed to: | |
|---|---|---|
| Location: #14 NW 6 St. Ft.Laud. Fl. 33311 | | Date of Incident: 08-27-00 |
| | | Date of Report: 09-18-00 |

**Victim: Bobby Wilson**
**Arrested: Joseph Pontecorvo w/m 03-27-64**

On 08-27-00, this detective responded to the above crime location in reference to a barricaded suspect. Upon arrival I met with Sgt. Sheehan also a member of the FLPD "Crisis Negotiations Unit" who briefed me on the situation at hand. Sgt. Sheehan advised that the victim was walking home, when a w/m subject first shouted something at him, then retrieved some type of rifle from inside a warehouse and shot at the victim. Victim ran for his life to a convenience store approximately 2 blocks away and called the police. Upon arrival uniform officers attempted to make contact with the assailant at the address in question, however after a brief dialogue, the person at this location refused to open the door and step outside. It should be noted that while the uniform officers who first responded were attempting to establish a dialogue with the subject inside the warehouse, Ofc. Roper having obtained a point of observation could see a w/m subject armed with a rifle refusing to come out. (For additional information see Ofc. Roper's police report).

For approximately 2 hours this detective attempted to establish contact with this individual by the use of a bullhorn, with negative results. Unable to establish contact with the subject, a decision was made to have SWAT team members make entry. Once inside SWAT team members confronted and took into custody a w/m subject/ Pontecorvo. During the course of this tactical assault SWAT team members observed in plain view 2 firearms, and an explosive device. SWAT team members remained at this scene until relieved by Bomb Squad Sgt. Diaz. (For additional information see the supplement of SWAT/Ofc. Loges).

Once in custody arrested was brought out to the street. Ofc. Roper immediately identified him as the same person he had observed armed with some type of rifle refusing to open the door for the police. Victim/Wilson was also brought back to the scene where he was able to identify the arrested as the same person who had pointed a rifle and shot at him earlier. Ofc. Roper took custody of the arrested, and transported him to BGH/ER for medical clearance. I spoke with the victim briefly. During our conversation he stated that he wanted to pursue criminal charges against his assailant. This detective then took a sworn statement from the victim. In his statement the victim explains in detail the turn of events leading up to the shooting, how he had to run for his life twice, and again expressed his desire to prosecute his attacker. (For additional information see the victim's supplement).

In the mean time Sgt. Diaz initiated a bomb squad call out. Det. Arbit responded to the scene and met with Sgt. Diaz at the scene. They then identified, rendered safe, and removed the suspected explosive device, by placing it in the "Explosive Container" and transporting it to FLPD. Det.

| Detective: **Det. A. Carbo** | | CCN: Fl 778 | Unit: K-61 |
|---|---|---|---|
| Reviewing Officer: Sgt. D.Bryant | | CCN: Fl 994 | Date: *9-19-00* |
| Routed to: | Referred to: | | |
| Case Status Type  / 1. Arrest 2. Exceptional 3. Unfounded  Date Cleared: *9-19-00* | | | |

Exception 1. Extradition Declined                              3. Death of Offender              5. Prosecution Declined
           2. Arrest on primary offense secondary offense without prosecution 4. V/W Refused to cooperate 6. Juvenile/No Custody

| FT. LAUDERDALE POLIC. JEPARTMENT | OR# -110265 |
|---|---|
| Supplemental Report | Related OR# |

Arbit also notified ATF about this incident. (For additional information see the supplements of Sgt. Diaz, and Det. Arbit).

Once the scene was secured by the bomb techs (Diaz and Arbit), Forensics technician Coval took over the scene. She photographed the scene and collected the 2 firearms that were found by the SWAT team earlier. Both guns were loaded and rendered safe by Sgt. Eaves. (For additional information see Coval's supplement).

On 08-28-00, this detective along with Det. Arbit met with ATF/Agent Belsky and Meyer at FLPD. Det. Arbit and Agent Belsky proceeded to take the explosive device found apart. All the contents of the explosive devise were divided and then placed into individual containers. All evidence containers were turned over to Agent Belsky, with a request for forensic examination. All four of us then met with Forensic Tech/ Coval at the FLPD lab. This detective along with Agent Belsky field-tested both the M-11 and the shotgun. Both weapons appeared operable, and the M-11 field-tested to fire in a full automatic mode. Both weapons along with the suspect silencer attached to the M-11 were sent to the BSO/Lab for further testing.

On 09-05-00, this detective met with the arrested at FLPD. Arrested had been taken into custody by virtue of a federal arrest warrant. Arrested was advised of his constitutional rights by this detective. Arrested refused to speak with this detective without his attorney present. Arrested was then taken to FLPD/Jail.

All pertinent documents pertinent to this investigation have been forwarded to the SAO.

**Case closed by arrest.**

| Detective: **Det. A. Carbo** | CCN: Fl 778 | Unit: K-61 |
|---|---|---|
| Reviewing Officer: Sgt. D.Bryant | CCN: Fl 994 | Date: 9-19-00 |

Routed to:                                  Referred to:

Case Status Type / 1. Arrest 2. Exceptional 3. Unfounded  Date Cleared: 9-19-00

Exception 1. Extradition Declined                           3. Death of Offender              5. Prosecution Declined
          2. Arrest on primary offense secondary offense without prosecution 4. V/W Refused to cooperate 6. Juvenile/No Custody

**FORT LAUDERDALE POLICE DEPARTMENT**
**SUPPLEMENT PAGE 1**
Exhibit 3

| | |
|---|---|
| Offense 2 Arrest | a |
| Juvenile | |
| 1 Original 2 Supplement | a |

O.R.# 0101-1102651

Original Date Reported: 08.27.00   Case Title: Aggravated Assault
Reported: Day SUN   8/27/00   Time (mil) 0430   Related Report Numbers:

Incident Type: 1 Felony 2 Traffic Felony 3 Misdemeanor 4 Traffic Misdemeanor 5 Ordinance 9 Other

**OFFENSE CHANGED TO**   ☐ N/A

OFFENSE #1 Type Title ...
OFFENSE #2 Type Title ...

Incident Location (Street, Apt. Number): 14 NW 6th Street   City: Fort Lauderdale   Zip: 33311   Rept. Area:   Zone: 204

NARRATIVE/CONTINUATION

On the listed date and time this Detective, along with other members of the FLPD SWAT Team responded to the incident location in ref. to an armed subject that was held up in the incident location. The subject had committed an Aggravated assault with a firearm a short time before our response, and ran into the incident location in an attempt to hide from police. Upon my arrival at the incident location, I was assigned a perimeter point on the NE corner of the bldg by Sgt VanSant. I remained on that point til approx. 0630hrs, when an arrest team was formed, and an entry was made on the bldg. where the subject was held up in. Upon entry into the bldg. this Detective and other SWAT Team members located the subject in a room on the south side interior of the bldg. The subject was a W/M in his mid-30's and was laying on a bed in the room. This Detective and other members identified ourselves as Ft. Lauderdale Police and attempted to take the subject into custody. The subject was told to put his hands behind his back and that he was under arrest. The subject refused and pulled his arms away from officers' grasp defeating our efforts to cuff him. After a short struggle with officers the subject was taken into custody and handcuffed. The subject was escorted from the scene and placed into a marked unit by other SWAT Officers. While attempting to take the subject into custody this Detective observed a Mac11 pistol with a silencer on it laying in plain view on the floor adjacent to the subjects bed. It should be noted

Report Contains:   Related Report Number(s):

Officer(s) Reporting: Lages   I.D. Number(s): 1283   Unit: Y-21   Date: 8/27/00
Officer Reviewing (if Applicable):   I.D. Number:   Router To: Violent Crimes   Referred To:   Assigned To:   By:   Date:

Case Status:   Clearance Type 1 Arrest 2 Exceptional   3 Unfounded   A-Adult J-Juvenile   Date Cleared:   Arrest Number:   Number Arrested:
Exception Type 1 Extradition Declined   2 Arrest on Primary Offense Secondary Offense Without Prosecution   3 Death of Offender 4 V/W Refused to Cooperate   5 Prosecution Declined 6 Juveniles/No Custody   OBTS Number:   Page 1 of 1

FORM Z-248A   Rev 6/88

**FORT LAUDERDALE ... ICE DEPARTMENT**
**SUPPLEME... T PAGE 2**

Agency Report Number: 00-17102265

| ADM | Original Date Reported | Case Reference |
|---|---|---|
| | 08.27.00 | Aggravated Assault |

the pistol was well within arm's reach (approx. 18 inch) of the subject when officers made contact with the subject. Next to the pistol was an open camera bag with a baseball shaped object covered with foil in it. The object had what appeared to be a fuse sticking out of it. This Detective believing the object to be some kind of explosive device immediately notified members of the bomb squad. (Sgt Diaz) The Detective remained with the pistol in place and suspected explosive device until I was relieved by Sgt Diaz of the Bomb Squad and Sgt Eaves from Road patrol. No Further action was taken by this Detective.

OFFICER AFFIDAVIT: SWORN AND SUBSCRIBED BEFORE ME THIS **27th** DAY OF **August** **2000**

TITLE **Detective** PRINT NAME **Rob McGowan** CCN **1221**

SIGNATURE **Rob McGowan**

AFFIDAVIT OF COMPLAINT: I hereby swear that the above described acts were committed without my permission against my will, as reported by me, by person or persons unknown/known to me as _____ and further that I DO _____ DO NOT _____ desire to prosecute.

Sworn and subscribed by me this _____

day of _____ 19 _____ Victims Signature _____

2 of 2

FORM Z-248A Rev. 6/88 (Back)

# FORT LAUDERDALE POLICE DEPARTMENT
## SUPPLEMENT PAGE 1

O.R.# `U 0 - 1 1 C 3 6 5`

| Original Date Reported | Case Title |
|---|---|
| 0 3 2 7 C C | AGG. Assault |

| Reported: Day | Date | Time (mil) | Related Report Numbers |
|---|---|---|---|
| SUN | 8-27-00 | 0400 | |

| Incident Type: 1 Felony / 2 Traffic Felony | 3 Misdemeanor / 4 Traffic / 5 Misdemeanor | 5 Ordinance / 9 Other |
|---|---|---|

## OFFENSE CHANGED TO ☐ N/A

| OFFENSE #1 | Type | Title | A-Attempted C-Committed | Statute Violation Number | Municipal Ordinance |
|---|---|---|---|---|---|

| OFFENSE #2 | Type | Title | A-Attempted C-Committed | Statute Violation Number | Municipal Ordinance |
|---|---|---|---|---|---|

| Incident Location (Street, Apt. Number) | City | Zip | Rept. Area | Zone |
|---|---|---|---|---|
| 14 NW 6 ST. | FT. Laud, FL | | | 20X |

**NARRATIVE/CONTINUATION**

On the above date and time I responded to the listed address in reference to a SWAT callout for an armed, barricaded subject. On arrival, I was assigned to the arrest/entry team. I was directed to attempt contact with a bullhorn and did so for forty-five minutes with negative results.

As the team prepared for entry, I deployed a Def-Tec No. 25 diversionary device, secured to an extension pole through the south window on the west side. As a result, all of the jalousie glass panels shattered. I then entered the structure with the entry team. The W/M was taken into custody in a small makeshift room at the south end of the building by other members of the entry team.

After securing the subject, I noticed what appeared to be a suppressed M-11 machine-pistol on the floor next to a bed, in plain view. It was left in place for forensics. While attempting to locate another diversionary device reloadable unit, I noticed a bullpup style shotgun under the bed. The shotgun also was tot forensics. No further info.

| Report Contains | | Related Report Number(s) |
|---|---|---|
| OIK Supp. | | |

| Officer (Reporting) | I.D. Number(s) | Unit | Date |
|---|---|---|---|
| DiMaglio, Michael | 7241 | SWAT | 8/27/00 |

| Officer Reviewing (If Applicable) | I.D. Number | Router To | Referred To | Assigned To | By |
|---|---|---|---|---|---|
| | C12 | | | | |

| Case Status | Clearance Type: 1 Arrest / 2 Exceptional | 3 Unfounded | A-Adult J-Juvenile | Date Cleared | Arrest Number | Number Arrested |
|---|---|---|---|---|---|---|

| Exception Type 1 Extradition Declined | 2 Arrest on Primary Offense Secondary Offense Without Prosecution | 3 Death of Offender 4 V/W Refused to Cooperate | 5 Prosecution Declined 6 Juvenile/No Custody | OBTS Number | Page Page |
|---|---|---|---|---|---|

FORM Z-248A   Rev 6/88